# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **KATHIE J. ALERTAS**, | Case No. 3:13-cv-00717-SI |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| **CAROLYN W. COLVIN**, Acting Commissioner of Social Security, | |
| Defendant. | |

Karen Stolzberg, 11830 SW Kerr Parkway, #315, Lake Oswego, OR 97035. Of Attorney for Plaintiff.

S. Amanda Marshall, United States Attorney, and Ronald K. Silver, Assistant United States Attorney, United States Attorney's Office, District of Oregon, 1000 S.W. Third Avenue, Suite 600, Portland, OR 97204-2902; Nancy A. Mishalanie, Special Assistant United States Attorney, Office of the General Counsel, Social Security Administration, 701 Fifth Avenue, Suit 2900 M/S 221A, Seattle, WA 98104-7075. Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

Ms. Kathie J. Alertas ("Ms. Alertas") seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying Ms. Alertas's application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Title II and Title XVI of the Social Security Act. For the following reasons, the Commissioner's decision is AFFIRMED with respect to Ms. Alertas's application for DIB and

REVERSED and remanded for an award of benefits as of April 18, 2012 with respect to

Ms. Alertas's application for SSI.

## STANDARDS

The district court must affirm the Commissioner's decision if it is based on the proper

legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see*

*also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means

"more than a mere scintilla but less than a preponderance." *Bray v. Comm'r Soc. Sec.*

*Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala,* 53 F.3d 1035, 1039

(9th Cir. 1995)). It means "such relevant evidence as a reasonable mind might accept as adequate

to support a conclusion." *Id.* (quoting *Andrews*, 53 F.3d at 1039).

Where the evidence is susceptible to more than one rational interpretation, the

Commissioner's conclusion must be upheld. *Burch v. Barnhart*, 400 F.3d 676, 679

(9th Cir. 2005). Variable interpretations of the evidence are insignificant if the Commissioner's

interpretation is a rational reading of the record, and this Court may not substitute its judgment

for that of the Commissioner. *See Batson v. Comm'r of the Soc. Sec. Admin.*, 359 F.3d 1190,

1193 (9th Cir. 2004). "[A] reviewing court must consider the entire record as a whole and may

not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*,

495 F.3d 625, 630 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882

(9th Cir. 2006) (quotation marks omitted)). A reviewing court, however, may not affirm the

Commissioner on a ground upon which the Commissioner did not rely. *Id.*; *see also Bray*,

554 F.3d at 1226.

## BACKGROUND

### A. Ms. Alertas's Application

Ms. Alertas protectively filed an application for DIB on October 22, 2007. AR 275-284.
She initially alleged disability beginning on December 31, 2000, but later amended that date to
March 1, 2002. AR 98, 277. Ms. Alertas was born April 18, 1957; she was 50 years old at the
time of her application and 43 years old at the time of the original claimed onset date. AR 277.
She alleged disability due to right eye blindness caused by a brain tumor, anxiety and panic,
visual disorder, dizziness, herniated discs in her neck and back causing pain and urinary and
bowel incontinence, spondylitis and swayback, exertional asthma, anorexia, confusion, memory
loss, sleep problems, seizures, nerve damage, arthritis, and kidney infection. AR 334, 365, 382.

Ms. Alertas's application for DIB was denied initially on March 6, 2008. AR 151-54. She
then protectively filed an application for SSI on June 20, 2008. AR 285-88. Both claims were
denied upon reconsideration on August 21, 2008, after which Ms. Alertas requested a hearing
before an Administrative Law Judge ("ALJ"). AR 160-64, 166. Hearings were held before
ALJ Dan R. Hyatt ("ALJ Hyatt") on February 9, 2010, and July 13, 2010. AR 69-94, 95-106. On
July 26, 2010, ALJ Hyatt issued a decision denying Ms. Alertas's claims and finding her not
disabled. AR 118-35.

Ms. Alertas filed a request for review of ALJ Hyatt's decision by the Appeals Council,
and on June 20, 2011 the Appeals Council remanded Ms. Alertas's case to a new ALJ to further
develop evidence related to Ms. Alertas's alleged disability and to give further consideration to
her symptom testimony and residual functional capacity. AR 138. Upon remand, a hearing was
held before ALJ Richard A. Say ("the ALJ") on December 6, 2011. AR 40-68. The ALJ issued a
decision on December 23, 2011, denying Ms. Alertas's claims and finding her not disabled.
AR 19-39. On April 18, 2012, Ms. Alertas turned 55 years old. Ms. Alertas filed a request for

review of the ALJ's decision by the Appeals Council, and that request was denied on

March 12, 2013. AR 1-6, 17-18. Ms. Alertas seeks judicial review of the ALJ's decision.

## B.  The Sequential Analysis

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity

by reason of any medically determinable physical or mental impairment which . . . has lasted or

can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C.

§ 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for

determining whether an applicant is disabled within the meaning of the Social Security Act."

*Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011); *see also* 20 C.F.R.

§§ 404.1520 (DIB), 416.920 (SSI); *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Each step is

potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step sequential

process asks the following series of questions:

1.    Is the claimant performing "substantial gainful activity?" 20 C.F.R.
      §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). This activity is work involving
      significant mental or physical duties done or intended to be done for pay
      or profit. 20 C.F.R. §§ 404.1510, 416.910. If the claimant is performing
      such work, she is not disabled within the meaning of the Act. 20 C.F.R.
      §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is not performing
      substantial gainful activity, the analysis proceeds to step two.
2.    Is the claimant's impairment "severe" under the Commissioner's
      regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An
      impairment or combination of impairments is "severe" if it significantly
      limits the claimant's physical or mental ability to do basic work activities.
      20 C.F.R. §§ 404.1521(a), 416.921(a). Unless expected to result in death,
      this impairment must have lasted or be expected to last for a continuous
      period of at least 12 months. 20 C.F.R. §§ 404.1509, 416.909. If the
      claimant does not have a severe impairment, the analysis ends. 20 C.F.R.
      §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant has a severe
      impairment, the analysis proceeds to step three.
3.    Does the claimant's severe impairment "meet or equal" one or more of the
      impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so,
      then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii),
      416.920(a)(4)(iii). If the impairment does not meet or equal one or more of
      the listed impairments, the analysis continues. At that point, the ALJ must
      evaluate medical and other relevant evidence to assess and determine the

claimant's "residual functional capacity" ("RFC"). This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e), 404.1545(b)-(c), 416.920(e), 416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4.      Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

5.      Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1560(c), 416.960(c). If the claimant cannot perform such work, he or she is disabled. *Id.*

*See also Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 953; *see also Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999); *Yuckert*, 482 U.S. at 140-41. The Commissioner bears the burden of proof at step five. *Tackett*, 180 F.3d at 1100. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.*; *see also* 20 C.F.R. §§ 404.1566, 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953-54; *Tackett*, 180 F.3d at 1099.

## C.  The ALJ's Decision

The ALJ first noted that Ms. Alertas met the insured requirements for DIB through June 30, 2007 and that in order to be entitled to DIB she must establish that she was disabled on

or before that date. AR 22. The ALJ then engaged in the sequential analysis required by

regulation. AR 24-33. At step one, the ALJ determined that Ms. Alertas had not engaged in

substantial gainful activity after the alleged onset date. AR 24. At step two, the ALJ concluded

that Ms. Alertas had severe impairments related to anxiety, depression, right optic nerve

meningioma, and degenerative disc disease of the lumbar and cervical spine. AR 25.

At step three, the ALJ first found that Ms. Alertas did not have an impairment or

combination of impairments that met or medically equaled the severity of a listed impairment in

20 C.F.R. Pt. 404, Subpt. P, App. 1. AR 26. The ALJ then found that Ms. Alertas's mental

impairments did not meet or medically equal the regulatory listings, and that Ms. Alertas had

"mild" restrictions in her activities of daily living. *Id*. The ALJ determined that Ms. Alertas's

RFC includes the ability to perform light work, limited to unskilled work and routine tasks, and

that she can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl, but

should never climb ladders, ropes or scaffolds. AR 27. The RFC also includes that Ms. Alertas

has limited depth perception, should avoid concentrated exposure to hazards, and should have no

interaction with the public. *Id*.

In determining Ms. Alertas's RFC, the ALJ found that the evidence established that

Ms. Alertas's medically determinable impairments could reasonably be expected to cause some

of her alleged symptoms, but that her symptom testimony is not fully credible. AR 28. The ALJ

considered evidence that Ms. Alertas has no physically determinable causes for the severe pain

and balance problems she alleges, that she had a history of overusing her medications, that some

of her symptoms appear to be adequately controlled by treatment, and that neuropsychological

testing showed that Ms. Alertas tends to overstate her symptoms. AR 28-29. The ALJ also

considered written testimony from Ms. Alertas's brother-in-law regarding her activities of daily living, and the record evidence of many treating and examining physicians. AR 29-30.

At step four, the ALJ determined that Ms. Alertas cannot perform any of her past relevant work. At step five, taking into account Ms. Alertas's age, high school education, work experience, RFC, and the testimony of a Vocational Expert ("VE"), the ALJ found that Ms. Alertas is capable of performing jobs that exist in significant numbers in the national economy and is therefore not disabled. AR 32.

## DISCUSSION

Ms. Alertas argues that the ALJ erred by: (1) not including an alleged pain disorder and headaches as severe impairments at step two of the sequential analysis; (2) improperly rejecting part of the testimony of a treating physician; (3) improperly rejecting part of Ms. Alertas's symptom testimony for lack of credibility; (4) improperly rejecting the testimony of a lay witness; (5) failing to include necessary limitations in Ms. Alertas's RFC; and (6) failing to consider Ms. Alertas a "person of advanced age." Each argument will be addressed in turn.

## A.  Determination of Severe Impairment at Step Two

Ms. Alertas argues that the ALJ erred by failing to find that her alleged pain disorder and headaches are severe impairments at step two of the sequential analysis. The ALJ concluded that Ms. Alertas's severe impairments at step two include "anxiety, depression, right optic nerve meningioma, and degenerative disc disease of the lumbar and cervical spine." AR 25.

The step two inquiry is a *de minimis* screening device to dispose of groundless claims. *Bowen v. Yuckert*, 482 U.S. 137, 153-54 (1987). The claimant bears the burden of establishing that she has a severe impairment at step two by providing medical evidence. 20 C.F.R §§ 404.1512, 416.912. An impairment or combination of impairments is not severe "*only if* the evidence establishes a slight abnormality that has no more than a minimal effect on an

individual's ability to work." *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005) (emphasis in

original). The ALJ is required to consider the combined effect of all of the claimant's

impairments on his or her ability to function. *Howard ex rel. Wolff v.Barnhart*, 341 F.3d 1006,

1012 (9th Cir. 2003). If the ALJ determines that a claimant is severely impaired at step two, the

ALJ continues with the sequential analysis, considering all of the claimant's limitations, whether

or not they are severe. Social Security Ruling ("SSR") 96–9p, *available at* 1996 WL 374184,

at *5.

Ms. Alertas was diagnosed with a "chronic pain syndrome" by Dr. John Oppenheimer on

January 8, 2008. AR 733, 741, 748. She was provisionally diagnosed with a "Pain Disorder,

Associated with Both Psychological Factors and a General Medical Condition" by

Dr. James Bryan on March 12, 2010. AR 848. The ALJ discounted this diagnosis at step two

because of a lack of "longitudinal history of diagnosis or treatment," but considered its combined

effect with Ms. Alertas's other impairments later in the sequential analysis. AR 26. Ms. Alertas

also complained of chronic headaches that the ALJ did not find severe at step two because

Ms. Alertas's testimony in 2010 and 2011 was "slightly inconsistent" as to the symptoms of

those headaches, and medical records indicate that her headaches were stable and controlled with

medication. AR 25.

The ALJ's decision not to include these two alleged impairments as severe impairments

at step two is supported by substantial evidence in the record. Although Dr. Oppenheimer

diagnosed Ms. Alertas with a "chronic pain syndrome" before Dr. Bryan's diagnosis, it is not

clear from the record that the two diagnoses are the same; Dr. Oppenheimer's diagnosis does not

suggest a somatic symptom disorder. Additionally, during the discussion of Ms. Alertas's

credibility, the ALJ cited to evidence in the record showing that Ms. Alertas's pain is

significantly controlled by medication, that Ms. Alertas has a history of overusing her pain medications, and that she overstates the severity of her symptoms. AR 28-29; *see infra* Part C. The ALJ also found  Ms. Alertas's claims of disabling headaches to be an overstatement of her symptoms. AR 27-29; *see infra* Part C. Although the ALJ included some degree of severe pain from Ms. Alertas's back and neck problems, his decision not to credit the full severity alleged by Ms. Alertas at step two was not made in error.

Even if the ALJ erred by failing to conclude that Ms. Alertas's alleged pain disorder and headaches are severe, that error was harmless. Step two of the sequential analysis is "merely a threshold determination of whether the claimant is able to perform his past work." *Hoopai*, 499 F.3d at 1076. If an ALJ fails to consider limitations imposed by an impairment at step two but considers them in determining the claimant's RFC, the error is harmless. *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007). In this case, the ALJ resolved step two in Ms. Alertas's favor, finding that she had severe impairments that warranted moving on to step three. AR 25-26. In determining Ms. Alertas's RFC at step three the ALJ gave further consideration to Ms. Alertas's allegations of severe pain and headaches, ultimately discounting their severity pursuant to his determination of Ms. Alertas's credibility.

**B.  Weight of Opinion Evidence**

Ms. Alertas argues that the ALJ erred by failing to give appropriate weight to the opinions of Dr. Ginevra Liptan, a treating physician. Ms. Alertas contends that the ALJ improperly rejected Dr. Liptan's opinions that Ms. Alertas's mental conditions "exacerbated her experience of pain" and that she has cognitive deficits attributable to radiation treatments and past alcohol abuse. Ms. Alertas argues that, in light of Dr. Bryan's testing, the ALJ should have asked Dr. Liptan to clarify her opinions.

If a treating physician's medical opinion is not inconsistent with other substantial evidence in the record, and is supported by medically acceptable clinical findings, that opinion is given controlling weight. *Holohan v. Massanari*, 246 F.3d 1195, 1202; 20 C.F.R. § 404.1527(d)(2). An ALJ may reject a treating physician's uncontradicted medical opinion only for "clear and convincing" reasons supported by substantial evidence in the record. *Holohan*, 246 F.3d at 1202 (citing *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998)). If an ALJ does not give a treating physician's opinion controlling weight because it is not "well supported" or is inconsistent with other substantial evidence, the ALJ must consider specified factors in determining the weight it will be given, including length of the treatment relationship, frequency of examination, the nature and extent of the treatment relationship, evidence given to support the opinion, consistency with the record, and the physician's area of specialization. *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007); 20 C.F.R. § 404.1527.

Here, the ALJ discussed Dr. Liptan's medical source statement of January 29, 2010, and the opinions offered therein regarding Ms. Alertas's physical and mental impairments and limitations. Dr. Liptan offered opinions that Ms. Alertas needs to alternate postures every 30 minutes, can stand or walk for only four of eight hours in a working day, needs to take multiple unscheduled breaks per day, can lift only up to 10 pounds at a time and five pounds frequently, has no limitations in balancing, climbing or stooping, and is restricted in her ability to reach and sustain effort with her hands. AR 827-31. Dr. Liptan also opined that Ms. Alertas has "fair" ability to travel alone in familiar places, use public transportation, maintain regular attendance, sustain ordinary routine, work in coordination with others without being distracted, ask simple questions, accept instructions and criticism from supervisors, make simple work-related decisions, and respond to changes in routine. AR 832-33. Furthermore, Dr. Liptan opined that

Ms. Alertas has "poor" ability to remember procedures; understand, remember, and carry out short and simple instructions; maintain attention for extended periods; complete a normal workday or workweek without psychologically based interruptions; and be aware of normal hazards and take precautions. *Id.* Dr. Liptan attributed these mental limitations to "cognitive/memory deficits" as well as anxiety and "PTSD" and determined that Ms. Alertas has "mild" restriction of activities of daily living, "mild" difficulties maintaining social functioning, and "extreme" difficulties maintaining concentration, persistence, or pace. *Id.*

The ALJ determined that Dr. Liptan's opinions were due "little weight." AR 31. The ALJ determined that Dr. Liptan did not report objective findings to support her opinions, that there was no indication that Dr. Liptan had fully physically examined Ms. Alertas or formally evaluated her physical capacities, and that Dr. Liptan's opinions were inconsistent with other evidence of physical examinations that revealed minimal findings. *Id.* In his discussion of Dr. Liptan's opinions regarding Ms. Alertas's mental limitations, the ALJ noted that Dr. Liptan was Ms. Alertas's "pain management specialist," that Ms. Alertas's mental impairments are outside Dr. Liptan's area of expertise, and that Dr. Liptan's opinions are contradicted by Dr. Bryan's neuropsychological examination and Ms. Alertas's work as a cashier in 2009. *Id.*

Dr. Liptan's medical source statement was completed several months after the last time she saw Ms. Alertas, as indicated in the record, and is accompanied by no other records, findings, or explanations. It appears from other evidence in the record that Dr. Liptan saw Ms. Alertas only four times, over the course of approximately nine months in 2009. AR 788-95. Dr. Liptan saw Ms. Alertas as part of her treatment at the Legacy Pain Management Center, and the majority of Dr. Liptan's notes regarding her treatment of Ms. Alertas relate to pain and pain medications. Dr. Liptan's "physical examination" notes from her treatment of Ms. Alertas are

limited to brief statements giving Ms. Alertas's blood pressure, heart rate, and temperature; noting that she was "alert," "oriented," "in no apparent distress," and "nonsedated"; and that Ms. Alertas was "nonanxious appearing," and "moving all extremities." The more extensive notes of Dr. Ellison in 2008 and Dr. Oppenheimer in 2007 and 2008 reveal little in terms of the physical limitations contemplated by Dr. Liptan. AR 733-50, 778-81. The ALJ gave clear and convincing reasons for giving Dr. Liptan's opinion little weight and properly considered the factors required by 20 C.F.R. § 404.1527. The ALJ's decision regarding Dr. Liptan's opinions is supported by substantial evidence.

## C.  Plaintiff's Credibility

Ms. Alertas argues that the ALJ erred by finding that the credibility of Ms. Alertas's testimony was diminished based on invalid scores on neuropsychological tests conducted by Dr. Bryan, due to drug overuse and dependency, and due to questionable motivation to work. Although the ALJ gave additional reasons for discounting Ms. Alertas's credibility, including that her testimony was contradicted by medical evidence, activities of daily living, and lack of ongoing treatment, and that her pain was adequately controlled by medication, Ms. Alertas challenges the ALJ's credibility determinations with respect only to test scores, drug overuse and dependency, and motivation to work. The unchallenged reasons alone would suffice, *see Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1997 (9th Cir. 2004), but even if they would not, the ALJ gave sufficient reasons for discounting Ms. Alertas's credibility. The ALJ's credibility decision may be upheld overall even if not all of the ALJ's reasons for rejecting the claimant's testimony are upheld. *Id.*

There is a two-step process for evaluating the credibility of a claimant's own testimony about the severity and limiting effect of the claimant's symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). First, the ALJ "must determine whether the claimant has presented

objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). When doing so, the claimant "need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

Second, "if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen*, 80 F.3d at 1281). It is "not sufficient for the ALJ to make only general findings; he must state which pain testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Those reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing *Bunnell*, 947 F.2d at 345-46).

The ALJ may consider objective medical evidence and the claimant's treatment history, as well as the claimant's daily activities, work record, and observations of physicians and third parties with personal knowledge of the claimant's functional limitations. *Smolen*, 80 F.3d at 1284. The Commissioner recommends assessing the claimant's daily activities; the location, duration, frequency, and intensity of the individual's pain or other symptoms; factors that precipitate and aggravate the symptoms; the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; and

any measures other than treatment the individual uses or has used to relieve pain or other symptoms. *See* SSR 96-7p, *available at* 1996 WL 374186. The ALJ may not, however, make a negative credibility finding "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).

Further, the Ninth Circuit has said that an ALJ also "may consider . . . ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, . . . other testimony by the claimant that appears less than candid [and] unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment." *Smolen*, 80 F.3d at 1284.

At the first step of the credibility analysis the ALJ determined that Ms. Alertas's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms." AR 28. As part of the second step the ALJ then rejected Ms. Alertas's testimony as to the degree and severity of those symptoms for "specific, clear and convincing reasons." *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen*, 80 F.3d at 1281). The ALJ found the evidence showed that Ms. Alertas's history of treatment and functional limitations does not support her allegations of disabling pain and limitations. AR 28.

In discounting Ms. Alertas's testimony alleging severe pain, one of the factors cited by the ALJ was evidence that Ms. Alertas has overused and was dependent on her pain medications, suggesting that she may have been overstating her symptoms in order to obtain those medications. Medical records reveal significant concern from a number of treating and examining physicians that Ms. Alertas was overusing medication. Although Dr. Oppenheimer's records show that Ms. Alertas claimed her Vicodin overuse only resulted in running out of

medication twice per year, Dr. Oppenheimer noted immediately afterward that other records showed Ms. Alertas's statement was "minimizing." AR 743. Ms. Alertas points to her discontinued use of Compazine and Valium in 2008 as evidence that she was not overusing her pain medications; however, Compazine and Valium are primarily used to treat nausea and anxiety, respectively, not pain. As late as May 16, 2008, Dr. Jennifer Gibson stated that Ms. Alertas was "habitually overusing her medications." AR 806. The ALJ's conclusion that Ms. Alertas's claims of severe disabling pain are not fully credible because of her overuse of pain medications is supported by substantial evidence.

The ALJ also found that Ms. Alertas's credibility is more generally diminished by evidence from Dr. Bryan that Ms. Alertas overstates her symptoms and put forth only marginally valid effort on cognitive tests. Dr. Bryan conducted a number of tests during his appointment with Ms. Alertas, yielding scores measuring Ms. Alertas's response validity, intellectual functioning, intelligence, attention, concentration, psychomotor speed, memory, processing speed, language functioning, visual-spatial constructional functioning, and new learning and memory functions. AR 842-44. Dr. Bryan found that Ms. Alertas's validity scores are "below the range of valid effort." AR 842. Where "even genuinely cognitively impaired individuals" usually score above 90 percent, Ms. Alertas scored 75 percent, and other scores are "suspicious for poor effort." *Id*. Dr. Bryan described all of Ms. Alertas's function scores as either "Extremely Low," "Low Average," or "Borderline." *Id*. Dr. Bryan interpreted these scores as conservative estimates of Ms. Alertas's abilities because of her invalid effort, and suggested that they likely overstate her symptoms and distress. AR 846. Dr. Bryan concluded that Ms. Alertas's scores are not conclusive of either deliberate feigning or valid psychopathology, but provisionally diagnosed Ms. Alertas with a Somatoform Pain Disorder. AR 846-48. Contrary to Ms. Alertas's assertions

that Dr. Bryan's report clearly attributes Ms. Alertas's symptom overstatement to a somatoform

disorder, Dr. Bryan's conclusions reflect ambivalence, and suggest that determining

Ms. Alertas's actual cognitive and emotional symptoms and abilities would "require her full and

valid effort." AR 847.

   Ms. Alertas cites text in the Social Security Program Operations Manual System

("POMS") discouraging the use of tests like those conducted by Dr. Bryan for credibility

determinations. SSA, POMS, § DI 22510.007 (Nov. 26, 2012). The POMS, however, is an

internal guidance document representing the Social Security Administration's ("SSA")

interpretation; the POMS does not impose judicially enforceable duties. *Lockwood*, 616 F.3d

at 1073. Furthermore, the section of the POMS cited by Ms. Alertas appears to have only been in

effect between November 26, 2012 and sometime in 2013, after which time it was replaced by

more specific guidance instructing ALJ's not to order such tests. Office of the Inspector Gen.,

SSA, A-08-13-23094, Congressional Response Report: the Social Security Administration's

Policy on Symptom Validity Tests in Determining Disability Claims 3-4 (September 2013),

*available at* http://oig.ssa.gov/sites/default/files/audit/full/pdf/A-08-13-23094.pdf. Neither the

relevant text currently found in the POMS nor the earlier text cited by Ms. Alertas was in effect

either when Dr. Bryan conducted these tests or when the ALJ issued his decision. They therefore

unpersuasive.

   These were not the only grounds the ALJ found for discounting Ms. Alertas's pain

testimony. The ALJ also cited evidence in the record that Ms. Alertas's pain was controlled and

stable when treated with methadone, Vicodin, or a combination of the two. AR 28. Dr. Gibson

noted in April 2008 that Ms. Alertas "actually has no pain currently because she describes herself

as being completely physically inactive, sitting on the couch." AR 759. In October 2009,

Dr. Liptan recorded that Ms. Alertas was "doing well on current regimen of Vicodin 4 per day" and got "about 70% pain relief." AR 788. Even after Dr. Bryan's provisional diagnosis of a Somatoform Pain Disorder, Dr. Kim Kelly noted that Ms. Alertas's pain was "doing well" on Vicodin and rated a two out of ten, and that medication "improve[d] pain 75%, allow[ed] [Ms. Alertas] to function and do [activities of daily living]." AR 884, 886.

On their own, the test scores from Ms. Alertas's visit with Dr. Bryan would not constitute substantial evidence sufficient to support the ALJ's credibility determination. The ALJ's conclusion that Ms. Alertas's testimony overstates the severity of her pain, however, was also supported by medical records consistently indicating that Ms. Alertas's pain is adequately controlled by medication. The ALJ did not err by finding that Ms. Alertas's pain testimony is not credible beyond what is attributable to her medically supported impairments. Regardless of whether Ms. Alertas's overstatement of symptoms was due to deliberate feigning or a Somatoform Pain Disorder, the evidence is sufficient to support the ALJ's conclusion that Ms. Alertas's testimony alleging disabling pain is not credible.

The ALJ also concluded that Ms. Alertas's credibility is diminished due to "questionable motivation to work," based on her failure to seek new work after she was fired from her job as a cashier in 2009 for "reasons unrelated to her alleged impairments." AR 30. Ms. Alertas testified that she was fired after being accused by her employer of stealing. Ms. Alertas's uncontradicted testimony on this point, however, is that she was actually unable to perform the duties of the job. AR 46-47. Ms. Alertas also made numerous attempts after her initial radiation treatments in 2000 to return to her job at a CPA firm, before which she had a long and uninterrupted work history. The ALJ's conclusion that Ms. Alertas has "questionable motivation to work" is not supported by substantial evidence. Although the ALJ's assertion that Ms. Alertas has questionable

PAGE 17 – OPINION AND ORDER

motivation to work was in error, his credibility determination overall is supported by substantial evidence and is unchanged by the exclusion of Ms. Alertas's motivation. *See Batson*, 359 F.3d at 1997.

## D.  Lay Witness Testimony

Ms. Alertas argues that the ALJ erred by failing to give appropriate weight to the testimony of a lay witness, Ms. Alertas's brother-in-law Kermit Thompson, and that giving appropriate weight to Mr. Thompson's testimony would have required the inclusion of further limitations in Ms. Alertas's RFC. The ALJ considered Mr. Thompson's written testimony during discussion of Ms. Alertas's RFC. Ms. Alertas argues that the ALJ only discussed certain parts of Mr. Thompson's testimony that supported the ALJ's decision, but failed to discuss testimony that Ms. Alertas has anxiety attacks in crowded places, gets lost, becomes combative and angry during disagreements, does not get along with authority figures, has limited concentration ability, has only fair ability to follow instruction, handles stress and changes to routine poorly, is afraid of falling, and keeps the lights on all the time. Ms. Alertas argues that those limitations, if credited, would alter the RFC.

Lay witness testimony as to a claimant's symptoms is competent evidence that the Commissioner must take into account, unless he or she expressly decides to disregard such testimony, in which case "he must give reasons that are germane to each witness." *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993). An ALJ "need not discuss all evidence presented to [him or] her. Rather, [he or] she must explain why 'significant probative evidence has been rejected.'" *Vincent ex rel. Vincent v. Heckler*, 739 F.2d 1393, 1394-1395 (9th Cir. Cal. 1984) (emphasis in original) (quoting *Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981)).

Although the ALJ did not discuss every observation made in Mr. Thompson's statement, he did not reject Mr. Thompson's testimony. The limitations that Ms. Alertas claims the ALJ

failed to consider in relation to Mr. Thompson's testimony are included in the RFC. The RFC precludes Ms. Alertas from interacting with the public due to her anxiety and limits her to unskilled work and routine tasks due to her reduced concentration and ability to follow instructions. Consistent with a fear of falling, she is also precluded in the RFC from climbing ladders, ropes and scaffolds entirely, and from climbing ramps and stairs, balancing, stooping, kneeling, crouching, or crawling more than occasionally. Because the RFC includes the limitations suggested by Mr. Thompson's testimony, the ALJ did not erroneously reject Mr. Thompson's testimony.

**E.  Residual Functional Capacity**

Ms. Alertas argues that the ALJ erred in the determination of her RFC by failing adequately to consider Ms. Alertas's alleged balance problems, pain disorder, and mental function limitations. The ALJ declined to include limitations due to balance problems, severe pain, and mental function impairments to the full extent that Ms. Alertas complained of in her testimony; however, as the Court previously concluded, the ALJ properly rejected the credibility of Ms. Alertas's testimony as to those impairments. Although the ALJ did not completely preclude certain functions and activities in the RFC, lesser limitations are included consistent with the ALJ's credibility analysis.

The RFC includes limitations on Ms. Alertas's capacity to perform anything more than light work, as necessitated by the level of pain found credible by the ALJ. The RFC bars Ms. Alertas from climbing ladders, ropes or scaffolds, and limits her to climbing ramps and stairs, balancing, stooping, kneeling, crouching, and crawling only occasionally, consistent with some degree of balance problems. Finally, the RFC limits Ms. Alertas to only unskilled work and routine tasks, consistent with mild or moderate mental and cognitive impairments. Ms. Alertas's argument that the RFC does not adequately reflect these limitations is unpersuasive.

**F.  Borderline Age**

Ms. Alertas also argues that the ALJ and the Appeals Council erred by failing to consider her "borderline age situation" and award benefits as of her 55th birthday. Ms. Alertas argues both that the Appeals Council failed to address the fact that Ms. Alertas had ascended to a higher age category after the ALJ's decision and that the ALJ failed to consider whether Ms. Alertas should have been determined to fall within that higher age category due to a "borderline age situation" at the time of the ALJ's decision.

In applying a claimant's age as a vocational factor, the ALJ must determine which of three age categories the claimant falls into: "younger person," "person closely approaching advanced age," or "person of advanced age." 20 C.F.R. §§ 404.1563(c)-(e). A claimant is considered to be a "person of advanced age" if their chronological age is 55 or older. 20 C.F.R. § 404.1563(e). If a claimant is "within a few days to a few months of reaching an older age category, and using the older age category would result in a determination or decision that [claimant is] disabled, [the ALJ] will consider whether to use the older age category after evaluating the overall impact of all the factors of [claimant's] case." 20 C.F.R. § 404.1563(b).

At the time of the ALJ's hearing and decision Ms. Alertas was 54 years old and was approximately four months away from turning 55. Accordingly, the ALJ was required to consider whether Ms. Alertas should be considered a "person of advanced age" instead of a "person closely approaching advanced age"; the ALJ was not required, however, to explain in writing why he used Ms. Alertas's chronological age rather than the older age category. *Lockwood v. Comm'r Soc. Sec.*, 616 F.3d 1068, 1070 (9th Cir. 2010). The court in *Lockwood* did not decide whether an ALJ must provide express evidence that he or she considered the claimant's borderline age situation, but found that where the ALJ had referenced the claimant's age and the applicable regulation, she had adequately considered the claimant's age.  *Id*. at 1071.

PAGE 20 – OPINION AND ORDER

Here, the ALJ explicitly referenced Ms. Alertas's birthdate and the fact that she had already changed age categories once previously, and cited § 1563; the ALJ was aware of Ms. Alertas's age and of the ALJ's discretion under the regulation to use the higher age category. AR 32.

In deciding *Lockwood*, the Ninth Circuit relied heavily on the Sixth Circuit's reasoning in *Bowie v. Commissioner of Social Security*, 539 F.3d 395 (6th Cir. 2008), holding that § 1563 "merely promises claimants that the Commission will 'consider' veering from the chronological-age default in borderline situations" and does not impose a *per se* requirement that an ALJ explain a borderline age situation decision. 539 F.3d at 399. The *Bowie* court, however, also suggested that where the record indicates that using a higher age category would be appropriate, an ALJ's failure to provide some indication of consideration of the borderline age situation might constitute to a lack of substantial evidence for that decision upon judicial review in cases where substantial evidence supports using the higher age category. *Id*.

The SSA provides examples of "additional vocational adversities" whose presence may indicate that a higher age category is appropriate in a borderline age situation. *See* Office of Hearings and Appeals, SSA, Hearings, Appeals and Litigation Law Manual ("HALLEX") II-5-3-2 ("Application of the Medical-Vocational Guidelines in Borderline Age Situations"). Examples of additional vocational adversities include being barely literate, having "marginal" English skills, or having only an unskilled work history in an isolated industry. *Id*. The HALLEX indicates that the further a claimant is from the date when the claimant's chronological age will place them in the higher age category, the greater the additional vocational adversities that must be demonstrated. *Id*. The HALLEX, however, "does not impose judicially enforceable duties on either the ALJ or [a] court." *Lockwood*, 616 F.3d at 1072.

PAGE 21 – OPINION AND ORDER

Although little other guidance exists on what constitutes an additional vocational adversity, the *Bowie* court found no evidence of additional vocational adversities even where the plaintiff suffered from "hypertension, aortic stenosis, and recurrent depression." *Bowie*, 539 F.3d at 396. Similarly, in *Lockwood*, no additional vocational adversities existed when the plaintiff suffered from "degenerative disc disease of the lumbar spine with a history of fusion; a history of foot surgery; anxiety; a depressive disorder; and alcoholism." *Lockwood*, 616 F.3d at 1070. The adversities alleged by Ms. Alertas – limited depth perception, the need to avoid hazards, no public interaction, and only unskilled, routine tasks – are limitations that should be (and are) included in the RFC; not additional vocational adversities requiring use of a higher age category. Nothing in the record indicates that Ms. Alertas has any adversities akin to being barely literate, having marginal English skills, or having only an unskilled work history in an isolated industry. The ALJ did not err by failing to further explain his consideration of Ms. Alertas's age category.

The Court notes, however, that Ms. Alertas's age at the time of this opinion, 57, makes her a "person of advanced age" and that her RFC of light work, with a high school education or more, limited only to unskilled work, when combined with her current chronological age requires a finding of disability under the Medical-Vocational Guidelines. 20 C.F.R. Pt. 404, Subpt. P, App. 2, Table 2; 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 202.00(c). If Ms. Alertas had applied for SSI benefits on her 55th birthday, she would have been found eligible for benefits.

In *Chavez v. Brown*, 844 F.2d 691 (1988), the Ninth Circuit held that a change in age constituted "changed circumstances" when it was outcome determinative under the Medical-Vocational Guidelines. In that case, an individual applied for benefits twice: before and after turning 50 and ascending to the "closely approaching advanced age" category. Both applications were denied, with the second denial citing the ALJ's determination that the claimant was not

disabled on the first application as preclusive. The court considered the appeal of the second denial of benefits and held that the ALJ's determination of the claimant's RFC related to the first application was "entitled to some res judicata consideration" but that the ultimate determination that the claimant was not disabled was not. *Chavez*, 844 F.2d at 693-94. Based on the first RFC and the claimant's new age category, the claimant was disabled. *Id.*

In this case, the ALJ's finding that Ms. Alertas can perform only light unskilled work and routine tasks would be preclusive upon a new application by Ms. Alertas for SSI benefits, or if she had applied on or after her 55th birthday. The record established that Ms. Alertas had a high school education. Because the ALJ found that Ms. Alertas is unable to perform past work, it would be appropriate to consult the Medical-Vocational Guidelines. Considering the change in Ms. Alertas's age category, the Medical-Vocational Guidelines would require a finding that Ms. Alertas is now disabled and has been since her 55th birthday on April 18, 2012. 20 C.F.R. Pt. 404, Subpt. P, App. 2, Table 2; 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 202.00(c). As a matter of judicial economy, the denial of Ms. Alertas's application for SSI benefits is reversed and the case is remanded to the ALJ for an award of SSI benefits as of April 18, 2012.

## CONCLUSION

The Commissioner's decision that Ms. Alertas is not disabled is AFFIRMED as to Ms. Alertas's application for Disability Insurance Benefits, and REVERSED and remanded for an award of benefits as of April 18, 2012 as to Ms. Alertas's application for Supplemental Security Income benefits.

**IT IS SO ORDERED.**

DATED this 13th day of June, 2014.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge

PAGE 23 – OPINION AND ORDER